U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAKE CHARLES

SEP 26 2007

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| GUINN BROS., LLC | : | DOCKET NO. 2:05 CV 1616 |
| VS. | : | JUDGE MINALDI |
| JONES BROS. INC., OF TENNESSEE | : | MAGISTRATE JUDGE WILSON |

### MEMORANDUM RULING

Before the court is contractor Jones Brother's ("Jones") Motion for Summary Judgment for subcontractor Guinn Brother's ("Guinn") claim for damages on a construction project titled "State Project No. 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" (hereinafter "the Project"). Guinn filed a Memorandum in Opposition to the defendant's Motion for Summary Judgment.

### FACTS

This suit arises out of Jones' alleged breach of contract, resulting in Guinn's alleged damages.[1] The parties contracted to complete a portion of a construction contract on Highway 171 in Vernon and Sabine Parishes for the Louisiana Department of Transportation ("DOTD").[2] Pursuant to the contract, Guinn was to perform aspects of the DOTD contract, including the removal and building of four bridges.[3] This subcontract incorporated by reference all of the terms and conditions of the DOTD contract as well as all of the plans, specifications, and schedules between

---

[1] Pet. ¶ 4. The lawsuit was filed in August 2005, in Vernon Parish.

[2] *Id.* The contract between Jones and Guinn was executed on February 22, 2004. *Id.*

[3] *Id.* The original subcontract totaled $1,747,883.81. *Id.*

1

Jones and the DOTD.[4] During the Project, a dispute arose between Jones and the DOTD, which resulted in the DOTD permitting Jones to rebid on the outstanding amounts of work on the Project.[5]

Guinn alleges six causes of action in its petition.[6] First, Guinn alleges that Jones unreasonably failed to install surcharge and header material for use in Phase 1.[7] Guinn alleges that Jones' inability to timely install surcharge and header material prevented Guinn from working from May 29, 2000 until October 2, 2000. Jones had extensive communications with the DOTD about

---

[4] *Id.* ¶ 5. The subcontract between Jones and Guinn has a mandatory notice provision pertaining to claims for additional compensation, and states:

> Subcontractor agrees to give notice in writing and make all claims for which Owner is, or may be, liable in the manner provided and in a time framework which is consistent with the Principal Contract so that Contractor may timely give notice of such claim to Owner. Provided that the preceding sentence does not require earlier action, written notice of such claims shall be given by Subcontractor to Contractor within one (1) week prior to the beginning of the Work or the event or condition for which such claim is to be made, or immediately upon Subcontractor's first knowledge of the event of condition, whichever shall first occur. Otherwise, such claims shall be deemed waived. Subcontractor shall give written notice of all claims for which Contractor is, or may be liable, within five (5) days of the beginning of the event for which claim is made; otherwise, such claims shall be deemed waived. This notice period takes precedence over any other notice provisions provided by, or in, this Subcontract.

Def.'s Ex. A.

[5] Def.'s Statement of Undisputed Material Facts ¶ 5.

[6] Pet. ¶¶ 8-16.

[7] Pet. ¶ 8. Header material refers to the material immediately adjacent to the bridges. Pl.'s Mem. in Opposition to Mot. for Summary Judgment 4. A surcharge is a seven foot pile of dirt placed atop the embankment to give the embankment additional compaction, and settles once traffic commences. *Id.*

this problem.[8] The DOTD, on September 1, 2000, mandated the use of surcharge material, and stated in its letter to Jones that the DOTD would assume additional costs, which would be assessed at a later date.[9] Guinn sent Jones notification of delays and Guinn's intent to seek reimbursement for its additional costs on September 11, 2000.[10] This letter was forwarded to the DOTD on September 13, 2000.[11] On September 14, 2000, the DOTD responded that all additional costs would be determined at a later date via the Critical Path Method ("CPM") of Construction Scheduling.[12]

Second, Guinn alleges that Jones negligently installed the control point[13] in the wrong location on Northbound Bridge #2, Phase 1, preventing Guinn from continuing its work from November 13, 2000 through November 17, 2000.[14] Guinn alleges that it would take one hour to reset the control point, but that Jones stretched this task out for five days, resulting in Guinn's equipment and men remaining idle at the worksite.[15] Guinn notified Jones of the control point problem on October 27, 2000.[16] The October 27, 2000 letter states that Guinn will not be responsible

---

[8] Pl.'s Exs. J-N.

[9] Pl.'s Ex. O (Letter from the DOTD's Matthew Ziecker).

[10] Pl.'s Ex. Q (Sept. 11, 2000 Letter from Guinn to Jones).

[11] Pl.'s Ex. R (Sept. 13, 2000 Letter from Jones to the DOTD).

[12] Pl.'s Ex. S (Sept. 14, 2000 Letter from the DOTD to Jones).

[13] Control points are the reference points set to determine where to place the pilings for the bridge. Pl.'s Mem. in Opposition to Mot. For Summary Judgment 6.

[14] Pet. ¶ 9.

[15] *Id.*

[16] Pl.'s Ex. T (Oct. 27, 2000 Letter from Guinn to Jones).

3

for improperly performed layout due to the incorrectly placed layout points.[17] The letter does not state that Guinn intended to file a claim for delay.[18]

Third, Guinn alleges that Jones unreasonably prohibited Guinn from working on November 27, 2000, January 2, 2001 through January 8, 2001, January 10, 2001 through January 22, 2001, and March 8, 2001 through March 19, 2001.[19] Guinn alleges that Jones refused to blade off wet material on top of surcharge material, and also refused to permit Guinn to do so, resulting in Guinn's inability to work.[20]

Fourth, Guinn alleges that Jones negligently failed to reset control points on Northbound Bridge #2, Phase 1 from February 2, 2001 through March 1, 2001.[21] Guinn alleges that Jones instructed Guinn not to proceed until the problem was resolved, resulting in Guinn's equipment, material, and workers to remain idle at the worksite.[22] Guinn gave notice of the erroneous placement by letter on February 22, 2001.[23] Guinn also alleges that after Guinn resumed work based upon the reset control points, on April 2, 2001, Jones arrived at the worksite and informed Guinn that it had

---

[17] *Id.*

[18] *Id.*

[19] Pet. ¶ 10.

[20] *Id.*

[21] Pet. ¶ 11.

[22] *Id.*

[23] Pl.'s Ex. U (Feb. 22, 2001 Letter from Guinn to Jones). Guinn alleges in its complaint that it contacted Jones to come to the worksite on Feb. 2, 2001 to examine the control points. Pet. ¶ 11.

4

not resolved the control point problem and asked Guinn to cease operations.[24] Guinn gave notice of the delays by letter dated April 18, 2001.[25]

Fifth, Guinn alleges that Jones negligently failed to install embankment material,[26] causing Guinn several delays.[27] From May 24, 2001 through July 20, 2001, its equipment, material, and crew were unable to work because it was waiting for Jones to remove and re-install embankment material that Jones had not properly installed.[28] Guinn alleges that it completed the embankment work itself, with the approval of Jones and the DOTD, but has not been reimbursed for the use of its equipment or labor.[29] There is no evidence that Guinn provided Jones with written notice of these claims.

According to Guinn, from July 30, 2001 through October 1, 2001, Guinn was waiting for Jones to install embankment material for the approach slab on the south side of the Northbound Bridge #1, Phase #1, and that this delay caused Guinn's crew, equipment, and material to sit idle.[30] There is no evidence that Guinn provided Jones with written notice of this claim.

Guinn alleges that from October 9, 2001 to October 23, 2001, Guinn was waiting for Jones to properly install embankment material for both approach slabs at Northbound Bridge #1, Phase

---

[24] Pet. ¶ 12. This delay lasted until April 19, 2001.

[25] Pl.'s Ex. V (April 18, 2001 Letter from Guinn to Jones).

[26] Embankment material is the road base leading up to bridges and between bridges. Pl.'s Mem. in Opposition to Mot. for Summary Judgment 3-4. Embankment material must be in place before bridge construction can begin. *Id.*

[27] Pet. ¶ 13.

[28] *Id.*

[29] *Id.*

[30] Pet. ¶ 14.

#1.[31] Guinn alleges that it completed the embankment work itself, with the approval of Jones and the DOTD, but has not been reimbursed for the use of its equipment or labor.[32] There is no evidence that Guinn provided Jones with written notice of this claim.

Lastly, Guinn alleges that from October 23, 2001 through May 27, 2004, Jones refused to permit Guinn to perform any work without providing any reason, even though Guinn had its equipment and materials at the site.[33] Guinn sent a letter dated February 1, 2002, stating that Guinn was shut down,[34] and another on March 25, 2004 that stated Guinn was shut down since 2001.[35]

On May 27, 2004, counsel for Jones advised Guinn in writing to cease all work on the Project, and that Jones had negotiated a settlement with the DOTD.[36] The DOTD permitted Jones to rebid Phase II of the Project.[37] Accordingly, Guinn submitted a new bid to Jones that did not include specifics of its downtime claim in this bid because Guinn said it could not ascertain its downtime claim until the end of the costs could be established.[38]

As part of the settlement agreement, (hereinafter "Plan Change 50"), Jones agreed to

---

[31] Pet. ¶ 15.

[32] Pet. ¶ 15.

[33] Pet. ¶ 16.

[34] Pl.'s Ex. Y (Feb. 1, 2002 Letter from Guinn to Jones).

[35] Pl.'s Ex. Z (March 25, 2004 Letter from Guinn to Jones).

[36] Pl.'s Mem. in Opposition to Mot. For Summary Judgment 10.

[37] Pl.'s Ex. BB (May 27, 2004 Letter from Jones' counsel to Guinn's counsel).

[38] Pl.'s Ex. Z (Oct. 11, 2004 Letter from Guinn's counsel to Jones' counsel).

indemnify the DOTD for all claims arising out of the bridge construction project.[39] Although Guinn provided written notice that it would preserve its claims for downtime, Guinn did not produce dollar amounts until discovery. Details of Guinn's claims are included in the record,[40] but Guinn does not controvert Jones' assertion that it failed to proffer details prior to discovery. Guinn also alleges that it was supposed to receive $100,000 from the materials, beams, and steel from the removal of the bridges, pursuant to an oral modification of the contract with Jones.[41]

## RULE 56(c) STANDARD

A motion for summary judgment filed pursuant to Rule 56(c) of the Federal Rules of Civil Procedure should be granted if the file, including the opposing party's affidavits, demonstrate that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) (noting that the underlying purpose of Rule 56(c) is to dispose of claims and defenses that are factually unsupported). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment, by identifying portions of pleadings and discovery that demonstrate the lack of a genuine issue of material fact for trial.[42] *Tubacex, Inc. v.*

---

[39] Pl.'s Ex. EE (Plan Change 50, Feb. 1, 2005).

[40] Pl.'s Ex. G (Claims 1-15).

[41] Pl.'s Ex. E at 47, 51 (Dep. of George Guinn). In reference to whole line items that were removed from the contract, Mr. Guinn states that "I don't remember the little specifics. The biggest thing I remember is we were going to end up with about $100,000 worth of beams from the old bridges." *Id.* at 47. Mr. Guinn also states that "The reason we did those other two bridges and the other demolitions for the lesser amount was because we were going to get all them beams underneath the bridges." *Id.* at 51.

[42] A material fact is one that could impact the resolution of the case; factual disputes that are irrelevant or unnecessary do not warrant a grant of summary judgment. *Anderson v. Liberty*

7

*M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* "Mere conclusory allegations are not competent summary judgment evidence...." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Similarly, unsubstantiated assertions, improbable inferences and unsupported speculation are also not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1975). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational finder of fact to find for the non-moving party...." *Id.*

## ANALYSIS

### A.) Contractual Notice Provisions

Jones argues that Guinn failed to comply with the contract's mandatory written notice provisions, and is thus barred from recovering on its claims. Jones maintains that Guinn falls "woefully short" of meeting the mandatory notice provisions of the subcontract, which require written notice within one week prior to the beginning of the event or condition for which such claim is to be made, or within five days of the beginning of the event.[43]

Jones also avers that Guinn failed to give notice of the claims pertaining to surcharge for

---

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[43] Def.'s Mem. in Support of Mot. For Summary Judgment 13.

8

which the DOTD is responsible, which are Guinn's first and third claims.[44] Jones maintains that Section 28 of the contract required Guinn to provide Jones with notice of all claims against the DOTD. Section 28 reads: "Subcontractor agrees to give notice in writing and make all claims for which Owner is, or may be, liable in the manner provided and in a time framework which is consistent with the Principal Contract so that the Contractor may give timely notice of such claim to Owner."[45] The Engineering Directives and Standards Manual ("EDSM") III.1.1.28 provides procedures for Jones to submit claims to the DOTD, and requires notice and documentation of such claims, including all items and figures the contractor intends to prove.[46] Jones argues that Guinn failed to comply with both the mandatory notice and documentation requirements for these claims, and thus cannot recover for surcharge-related claims.

Guinn argues that it submitted timely notice pursuant to the contract.[47] Guinn's position is

---

[44] Def.'s Mem. in Support for Mot. For Summary Judgment 15.

[45] Def.'s Ex. A at 8.

[46] Def.'s Ex. C at 2.

[47] Guinn first asserts that it may assert claims without written notice to the defaulting contractor because the contract stated "time was of the essence." Guinn is correct that when "time is of the essence" and the obligation is clearly fixed, the obligor is put in default by the arrival of that term, pursuant to La. Civ. Code Ann. art. 1990. Guinn and Jones, however, contracted for a specific notice period, which takes precedence over the Code's provisions. The Code's provisions are "suppletive, not mandatory," and apply only when the "contract fails adequately to cover a given issue." *See* Gen. Elec. Capital Corp. v. Southeastern Health Care, Inc., 950 F.2d 944, 951 (5th Cir. 1991). Thus, Guinn's argument that notice was not required under the Code is unavailing because the contract clearly provides for written notice.

Guinn also argues that even absent written notification, Jones had actual notice because of Jones' presence at the worksite. In Louisiana, when a contract is clear, courts give effect to the terms and do not perform additional interpretation. La. Civ. Code Ann. art. 2046. The contractual requirement of written notice applies because the contract clearly states that Guinn was to provide Jones with "notice in writing." Def.'s Ex. A. Accordingly, any form of actual

that it provided timely written notice of its claims, and the initial written notice served as subsequent notice when the same problem again caused later delays.[48] Guinn also maintains that it was not required to provide full documentation pursuant to EDSM III.1.1.28 and Paragraph 105.18 of the Prime Contract between Jones and the DOTD, because those provisions only apply where Guinn is bringing suit against the DOTD.

In Louisiana, a contract is the law between the parties. *Gen. Elec. Capital Corp*, 950 F.2d at 950, 51; *see also* La. Civ. Code Ann. art. 1983 ("Contracts have the effect of law for the parties...."). When contractual terms are clear and do not lead to absurd consequences, a court should give effect to the terms of the contract and should not perform additional interpretation. *Big "D" Dirt Services, Inc.*, 653 So.2d at 607. Waiver provisions are enforceable as written if the waiver terms are clear and unambiguous. *Shelton v. Standard/700 Assoc.*, 2000-CA-0227 (La. App. 4 Cir. 1/31/01); 778 So.2d 1265, 1268-69. Notice and waiver provisions found in a parties' contract are thus valid, unless the Code contains some additional public policy governing default and notice. *See Gen. Elec. Capital Corp.*, 950 F.2d at 951 (noting that in absence of a contractually specified method, the Louisiana Civil Code does not contain an immutable public policy requirement of notice of default to sue for delay damages).

The governing document between the parties is their contract, which required Guinn to give written notice and make all claims:

> [w]ithin one week prior to the beginning of the Work or the event or condition for which such claim is to be made, or immediately upon Subcontractor's first knowledge of the event or condition, whichever shall first occur. Otherwise, such

---

notice Jones may have had is insufficient; all notice of claims must have been in writing.

[48] Pl.'s Mem. in Opposition of Mot. For Summary Judgment 18-20.

> claims shall be deemed waived. Subcontractor shall give written notice of all claims for which Contractor is, or may be liable, within five (5) days of the beginning of the event for which claim is made, or immediately upon [Guinn's] first knowledge of the event or condition, whichever shall first occur. Otherwise, such claims shall be deemed waived. [Guinn] shall give [Jones] written notice of all claims for which Contractor is, or may be liable, within five (5) days of the beginning of the event for which claim is made, otherwise such claim shall be deemed waived.

Def.'s Ex. A. Additionally, the contract incorporates the provisions of the Prime Contract between the DOTD and Jones, and thus requires documentation of all items and figures for claims against the DOTD that the subcontractor intends to prove.[49] Because the terms of the Prime Contract are expressly incorporated into the contract between Jones and Guinn, the notice and documentation provisions for claim submission contained therein also apply to Guinn's submission of claims for which the DOTD is responsible. These are Guinn's first and third claims.

Guinn failed to submit its claims within five days of the beginning of the event. Guinn's own evidence shows that it failed to submit written notice to Jones within five days of the triggering event for its fourth, fifth, and sixth claims.[50] For claim two, Guinn did send a letter before the triggering event, but the letter stated that Jones negligently installed a control point and that Guinn would not be liable for incorrect layout as a result of the control point. Guinn's letter did not mention possible claims for downtime, the claim it now makes, and thus cannot constitute proper notice to Jones for a downtime claim.

For claims one and three, for which the DOTD was ultimately responsible, Guinn failed to provide the documentation of its claims as required by EDSM III.1.1.28. Guinn did not provide

---

[49] Def.'s Exs. A, C.

[50] Guinn brought part of its sixth claim, for $100,000 of salvage material, under an oral modification theory. This claim is discussed under Section B, *infra*.

11

dollar amounts or specific claims until this litigation. Thus, Guinn failed to comply with the notice and documentation provisions clearly articulated or incorporated in its contract, and, accordingly, Guinn's claims are barred.

B.) Oral Modification of the Contract

Guinn argues that when it negotiated the contract and agreed to lower its bid, Jones orally promised that Guinn would receive all materials removed from the existing bridges, at a cost of $100,000, that Guinn could work continuously, and that Guinn would only have one mobilization of its equipment. Guinn argues that the contract was modified by Jones' delays and unanticipated changes in the contract. Guinn submits that these modifications are supported by: Jones' July 7, 2000 letter to the DOTD reserving the right to file claim for additional work and material; Jones' presence at the worksite and oral discussions with Guinn occurring at the worksite; the surcharge agreement with the DOTD, which changed the nature of Guinn's responsibilities; and Guinn's performance of Jones' responsibilities to avoid further delay and expense. Moreover, Guinn argues that the contract underwent several modifications as problems with the surcharge, control points, layout, embankment, headers, and approach slabs arose.

Written contracts for construction may be modified orally and by conduct of the parties. *Big "D" Dirt Services, Inc.*, 653 So.2d at 608 (noting that non-written modification is effective even if the contract mandates that all modifications be in writing). Thus, whether a contract was modified is a question of fact. *Id.* "The party asserting modification...must prove by a preponderance of the evidence facts or acts giving rise to the modification." *Id.* (citing La. Civ. Code Ann. art. 1831). Parol evidence is admissible to prove modification, as is silence, inaction, or implication. *Id.*

In *Big "D" Dirt Services*, contractor Westwood and subcontractor Big D had a contract that

required Westwood to give Big D notice of Big D's defective work and wait for seven days from the date of notification before Westwood could take any necessary steps to complete the work. 653 So.2d at 607. Big D claimed Westwood owed damages for breach of contract for failure to comply with the seven-day written notice provision. *Id.* at 605. Westwood argued that the strict notice requirement was orally modified by the parties. *Id.* at 607. The court agreed with Westwood, and held that the parties orally modified the seven-day written notice requirement. *Id.* at 608. The court placed import on the fact that Big D, the party asserting strict compliance with the notice provisions, scheduled curative work six weeks from the date of notice, when the contract required a remedy within seven days. *Id.* at 609. Thus, the court found that because Big D did not adhere to the notice provisions, Big D believed the provisions were modified. *Id.*

This case is distinguishable from *Big D*. Unlike Big D, who did not comply with the notice provisions itself but later asserted that Westwood's failure to comply with the notice provisions resulted in Westwood's breach, Jones did not act in such a way that demonstrates it orally modified the notice and documentation provisions.

Moreover, Guinn, as the nonmovant, has failed to satisfy its burden to present competent summary judgment evidence demonstrating a genuine issue of fact for trial. The evidence that Guinn proffers for its $100,000 claim consists of two non-consecutive pages of a deposition, without context, stating that the initial contract was going to provide Guinn with beams from the old bridges, at a value of $100,000.[51] This evidence does not rise above the level of unsubstantiated assertions such that this court is persuaded there is a genuine issue for trial.

Guinn's factual allegations on modification pertain to the modification of construction

---

[51] Pl.'s Ex. E. at 47.

13

deadlines. After discussing deadline modifications, Guinn asks, "How can Jones now argue that it had no knowledge of the problems it caused Guinn?"[52] Guinn's rhetorical question begs the heart of the issue. It is unsurprising that a construction contract underwent several modifications on deadlines and materials. Guinn has not introduced evidence that the parties ever endeavored to modify the claim notification requirement during any of these modifications. As discussed in footnote forty-seven, it is irrelevant whether Jones had actual notice of the delays. The contract clearly states that Guinn must provide written notice of all claims it intends to file within five days of the triggering event. Accordingly, Guinn's claims are barred for failure to comply with the mandatory notice provisions found in its contract.

C.) Detrimental Reliance

Jones alternatively argues that principles of detrimental reliance bar Guinn's surcharge claims, for which the DOTD was ultimately liable, because Jones settled with the DOTD without having details of Guinn's claims. Because this court already found that Guinn's claims are barred due to Guinn's failure to comply with the contract's mandatory written notice and documentation provisions, this court need not reach Jones' detrimental reliance claim.

For the reasons stated in this Memorandum Ruling,

IT IS ORDERED that the Defendant's Motion for Judgment filed on behalf of Jones Brothers, Inc., of Tennessee is hereby GRANTED.

Lake Charles, Louisiana, this __19__ day of __Sept__, 2007

---

[52] Pl.'s Mem. in Opposition of Mot. For Summary Judgment 14.

/s/ Patricia Minaldi
PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE